IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | *   Case No. 16-cr-0527-PWG |
| RICKY LAWRENCE BENNING, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant Ricky Lawrence Benning's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 101. Mr. Benning is currently incarcerated at Petersburg Medium FCI where he is serving an 87-month sentence for possessing a stolen firearm in violation of 18 U.S.C. § 922(j). Mr. Benning has been incarcerated in connection with this case since November 16, 2016, Def.'s Mot. Mem. 11; he was sentenced pursuant to a Fed. R. Crim. P. 11(c)(1)(C) guilty plea on July 5, 2018, *id.* at 2; Judgment, ECF No. 87. In his motion, he requests that the Court release him in light of the global pandemic and its potential impact on him due to his health conditions. The Government opposes Mr. Benning's motion for the reasons explained below. I have reviewed all the materials[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, Mr. Benning's motion is GRANTED in part and DENIED in part. I will order Mr. Benning released, but impose an additional condition of his supervised release to require ten and a half months of home confinement, with location monitoring, as directed by the probation officer. Mr. Benning will be released once he has completed a 14-day quarantine and the United States

---

[1] The motion is fully briefed. *See* ECF Nos. 101, 106, and 108.

Probation Office (USPO) completes an evaluation of the home where Mr. Benning will serve his home detention.

## BACKGROUND

On March 26, 2018, Mr. Benning entered a Rule 11(c)(1)(C) plea to a violation of 18 U.S.C. 922(j), which prohibits possession of stolen firearms. On July 5, 2018, the court imposed a sentence of 87 months' incarceration, which was the low end of the sentence contemplated by Mr. Benning's plea agreement. Plea Agreement ¶ 9, ECF No. 69. Mr. Benning is currently projected to be released from the Bureau of Prisons ("BOP") on October 30, 2021, according to the Government and the BOP inmate locator website. Gov.'s Resp 3 (ECF No. 106). As stated in his motion, Mr. Benning suffers from hypertension and hyperlipidemia. Def.'s Mot. Mem. 1. Hypertension is a comorbidity that increases the risk of severe illness should someone who has it contract COVID-19. *E.g.* https://www.covid19treatmentguidelines.nih.gov/overview/ (last visited November 25, 2020).

When the Government filed its opposition to Mr. Benning's motion, it stated that Petersburg Medium did not have a single case of COVID-19. Gov.'s Resp. 12–13. Conditions have since deteriorated. The BOP website now reports 17 active cases among inmates and three among staff. https://www.bop.gov/coronavirus/index.jsp (last visited November 25, 2020). With colder weather setting in, the virus' recent explosion throughout the country, and overcrowding at the facility—which the Government acknowledges but does not rebut—the Court cannot ignore the possibility of dire circumstances soon emerging at Petersburg Medium.

The Government Opposes Mr. Benning's motion because, in its view, he has failed to establish extraordinary and compelling circumstances to justify release; he remains a danger to the community; and he has failed to articulate a basis for release in light of the applicable sentencing

factors. Gov.'s Resp. 1. The Government concedes Mr. Benning has exhausted his administrative remedies. Gov.'s Resp. 9.

**DISCUSSION**

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). However, there is an exception when modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Here, Mr. Benning requests a modification of his sentence for "compassionate release" under the First Step Act, as amended.[2] The First Step Act permits a defendant to petition a federal court directly after exhausting all administrative rights whenever "extraordinary and compelling reasons" warrant a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, I must do the following: (1) determine whether the petitioner has fully exhausted all administrative remedies or 30 days have passed since the BOP received the request; (2) determine whether "extraordinary and compelling reasons" warrant a sentence reduction that is "consistent" with applicable policy statements issued by the Sentencing Commission; and (3) consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." *Id.*

**I.     Administrative Exhaustion**

A court may only consider a prisoner's motion for compassionate release if the prisoner has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have passed since the warden of a defendant's facility received such a request. 18 U.S.C. § 3582(c)(1)(A). This condition is satisfied, as the

---

[2] The "compassionate release" provision of the 1984 First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A)(i), permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). In 2018 Congress amended the compassionate release mechanism when it enacted the First Step Act of 2018. *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended, the compassionate release provision allows the court to act on a motion for compassionate release filed by a defendant.

Government concedes, because Mr. Benning previously filed a request for a reduction in sentence with the Warden at Petersburg, which was denied. Def.'s Mot. Mem. 2; Gov.'s Resp. 9.

## II.     Extraordinary and Compelling Reasons

Second, I must determine whether "extraordinary and compelling reasons" warrant a sentence reduction and that such a reduction is "consistent" with Sentencing Commission statements. 18 U.S.C. § 3582(c)(1)(A). I join with the majority of courts finding that 18 U.S.C. § 3582(c)(1)(A)(i) as amended grants courts independent discretion to decide whether there are "extraordinary and compelling reasons" to modify a sentence and does not require that a court defer to the Sentencing Commission's policy statements regarding this question. *See United States v. Wise*, ELH-18-72, 2020 WL 2614816, at *7-9 (D. Md. May 22, 2020) (holding the same and collecting cases). However, while not binding, the Sentencing Commission's policy statements may provide useful guidance.

The applicable Sentencing Commission policy statements are found in U.S.S.G. § 1B1.13, which recites the language of § 3582(c)(1)(A) before it was amended in 2018, including that "the defendant is not a danger to the safety of any other person or to the community." The commentary to the policy statement provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." U.S.S.G. § 1B1.13 app. note 1(A)–(C).

Here, the first two examples apply. Mr. Benning suffers from hypertension and hyperlipidemia. He is prescribed medication for both conditions. Def.'s Mot. Mem. 2. Mr. Benning suggests hypertension constitutes an extraordinary and compelling reason sufficient to justify release because, according to the CDC, persons diagnosed might be at an increased risk for

4

severe illness if they contact COVID-19. *Id.* The NIH and WHO agree with the CDC's assessment. Mr. Benning also cites studies that conclude hypertension is a highly common comorbidity of those who suffer severe COVID-19 cases. Def.'s Mot. Mem. 7 (citing, *e.g.*, *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease*, CDC www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited Nov. 21, 2020).

Additionally, Mr. Benning is 53 years old and, as a general proposition, the more advanced an individual is in age, the more likely they are to suffer the worst consequences of contracting COVID-19. Mr. Benning submits that his medical condition and age, combined with Petersburg's overcrowding, constitute extraordinary and compelling circumstances.

The Government emphasizes that a finding of extraordinary and compelling circumstances should only be made in rare circumstances, and that fear of COVID-19 does not equate to a "get out of jail free" card. Gov.'s Resp. 6, 9. The Government's argument focuses largely on semantics: CDC guidance on pre-existing conditions that lead to the worst cases of COVID-19 suggest hypertension "might" put an individual at higher risk. *Id.* at 10–11; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 21, 2020). The Government also points out that Mr. Benning's age does not place him into the highest risk category. As to Petersburg, the Government suggests the measures BOP has taken to mitigate the virus are working. Gov.'s Resp. 13. That was apparently true when the Government filed its opposition, but the increase in cases at the facility shows that the measures BOP took were no panacea.

Judges in this court have found that the standard of extraordinary and compelling reasons was met during the COVID-19 pandemic where a defendant had serious medical problems that

5

placed them at high risk for complications if they contracted COVID-19. *See, e.g.*, *United States v. Jennings*, Case No.: 13-cr-46-PWG, 2020 WL 4748462, at *4 (D. Md. Aug. 17, 2020) (citing cases in this court and others and the application of multiple conditions). Certainly, the situation regarding COVID-19 is rapidly evolving, and new information about the virus and risk factors must be taken into account, as well as the changing conditions at prison facilities, for better or worse.

I find Mr. Benning's age and medical condition, and the potential for severe illness from COVID-19 that those traits invite, constitute extraordinary and compelling circumstances justifying a sentence modification. Further bolstering this finding is the deteriorating situation—despite well-intentioned mitigation efforts on BOP's part—at an over-crowded facility, which makes Mr. Benning more vulnerable to contracting the virus.

### III.     Sentencing Factors

A finding of "compelling and extraordinary reasons" is a necessary, not sufficient, condition for compassionate release. This Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense."

Here, Mr. Benning committed the instant offense after decades of encounters with the criminal justice system, and, adding to the gravity of the offense, engaged in a domestic assault (that the Government proved by a preponderance of evidence at sentencing) with one of the

6

weapons law enforcement recovered. Gov. Resp. 14. The finding on the assault resulted in a sentencing enhancement. Gov. Resp. 2.

But as the Court acknowledged during sentencing, Mr. Benning's convictions are significantly dated, and he was successfully employed without running afoul of the law for five years preceding the instant offense. Statement of Reasons 3, ECF No. 88.

As for the need for this particular sentence and types of available sentences, the main concern is community safety. Imposing home confinement as a condition of supervised release will protect the community while avoiding the risk that Mr. Benning is exposed to COVID-19, should conditions continue to worsen at Petersburg. The other applicable factors also counsel in favor of imposing home confinement as a condition of supervised release.

Mr. Benning has a release plan with a place to live, a possible job with the D.C. Department of Public Works, and a support system that includes his parents. Def.'s Mot. 11. He is also required to undergo substance and mental health treatment, which he started while incarcerated.

There is no doubt that Mr. Benning's offense was severe, but his conduct in the years before and after, combined with his release plan, convince me that the offense was, in defense counsel's words, an aberration. And he has served significant prison time, with his release scheduled in less than one year.

Considering all of the circumstances, I find that granting release at this time would be consistent with the sentencing factors set forth in § 3553(a)—Mr. Benning will continue to be confined for an additional period of time, albeit under home detention as a condition of supervised release, thus reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. § 3553(a)(2)(A). The sentence also promotes deterrence: Mr. Benning has served most of his sentence while in the BOP, which underscores the severity of his conduct. §

3553(a)(2)(A). Home confinement as a condition of supervised release will protect the public and Mr. Benning has started important BOP programming (the Residential Drug Abuse Program) while incarcerated and will continue these efforts upon release. § 3553(a)(2)(C)-(D).

## CONCLUSION

The Court recognizes the seriousness of the COVID-19 pandemic and the risks that Mr. Benning faces based on his age, health conditions, and location. I find that he has exhausted his administrative remedies, shown extraordinary and compelling reasons for a sentence modification, and demonstrated the applicable sentencing factors justify such a modification. Therefore, Mr. Benning's motion for compassionate release is granted in part.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 2nd day of December 2020, hereby ORDERED that Mr. Benning's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 101 is GRANTED IN PART and DENIED IN PART. Mr. Benning shall be released upon completing a 14-day quarantine and USPO's approval of the home where he shall be placed on home confinement for ten and a half months as a condition of supervised release.

/S/
Paul W. Grimm
United States District Judge